UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Shawn M. Smith,<br>Individually and on Behalf of the<br>General Public,<br>1532 15th Street NW, Apt. 3<br>Washington, DC  20005<br><br>*Plaintiff*,<br><br>*v.*<br><br>Abbott Laboratories<br>d/b/a Abbott Nutrition Co.,<br>100 Abbott Park Road<br>Abbott Park, IL 60064<br><br>*Defendant.* | Civil Case No. _____ |

## NOTICE OF REMOVAL

Abbott Laboratories, Inc. ("Abbott"), by and through its undersigned counsel, hereby gives notice of the removal of this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.  Removal to this Court is proper because (1) this Court has original jurisdiction over this case, and (2) the United States District Court for the District of Columbia is the district embracing the place where the state court litigation is pending.  In support of this Notice of Removal, Defendant states as follows.

### INTRODUCTION

1. Plaintiff Shawn Smith's complaint pleads a representative action "on behalf of the general public… to restore to the consumer money which was acquired by means of the unlawful trade practice" and "on behalf of the general public … for all damages requested above including injunctive relief and all other monetary damages allowed by law …."  Compl. ¶¶ 42-43.

1

2. Three weeks ago, the District of Columbia Court of Appeals issued a landmark decision in the case of *Rotunda v. Marriott International, Inc.*, No. 14-CV-618, ---A.3d---, 2015 WL 5173042 (D.C. Sept. 3, 2015). Ex. A. This decision materially alters the analysis of whether a representative action for damages under the District of Columbia Consumer Protection Procedures Act ("DCCPPA") can be removed to federal court. In *Rotunda*, the Court of Appeals held that representative DCCPPA actions are, in effect, class actions that must comply with the requirements of Rule 23. *Id.* at *1, *7. This holding contradicts the reasoning and conclusions of a line of cases, including *Breakman v. AOL LLC*, 545 F. Supp. 2d 96 (D.D.C. 2008), where this District concluded that a DCCPPA "representative action is authorized by District of Columbia statute and is a separate and distinct procedural vehicle from a class action." *Id.* at 101. According to the reasoning in *Breakman* and subsequent decisions, DCCPPA representative actions were not encompassed by the Class Action Fairness Act ("CAFA") and 28 U.S.C. § 1332(d)(2) therefore did not provide federal subject-matter jurisdiction. But only now, after the Rotunda decision, is it clear that *Breakman* and its line of decisions are contrary to District of Columbia law and incorrectly decided.[1] Prior to the *Rotunda* decision, a decision in this District in *Stein v. American Express Travel Related Services*, 813 F. Supp. 2d 69, 74 (D.D.C. 2011), went so far as to sanction a defendant who attempted to remove a representative DCCPPA suit because the question of whether such an action is removable was deemed to have been effectively settled.

3. On September 22, 2015, Abbott raised this significant legal development with plaintiff Smith's counsel and the fact that he was pursuing a representative suit for damages in

---

[1] *See, e.g.*, *California v. Freeman*, 488 U.S. 1311, 1313 (1989) ("Interpretations of state law by a State's highest court are, of course, binding upon this Court."); *United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991) ("Our policy has been to defer to the District of Columbia Court of Appeals on questions of statutory interpretation.").

his complaint. Ex. B. Abbott offered Smith the opportunity to amend his complaint to fully comply with Rule 23. Smith alternatively could have amended his complaint to remove his pleading of a representative action "on behalf of the general public." *See*, *e.g.*, Compl. ¶ 43. Smith did neither. Instead, Smith replied by acknowledging the legal significance of *Rotunda*, but declining to amend his complaint and expressing a desire to proceed on the complaint "currently pled"—a complaint seeking representational damages which, under the *Rotunda* decision, is subject to the Class Action Fairness Act. Ex. B.

4. Abbott "first [] ascertained that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(3), based on the Court of Appeals *Rotunda* "order" and the "other paper" of plaintiff Smith's September 22, 2015 response (declining to amend the complaint acknowledged to be pleading damages in a representative capacity). *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (affirming removal in light of intervening Supreme Court precedent). This Notice of Removal is timely filed within 30 days thereof.

## BACKGROUND

5. Plaintiff Shawn M. Smith filed this action (hereinafter, the "Complaint"), on his behalf and on behalf of the general public, on April 27, 2015, in the Superior Court of the District of Columbia, bearing the above caption, with Case No. 2015 CA 3045 B (the "Removed Action").

6. On May 18, 2015, Smith served Abbott a copy of the Complaint in the Removed Action (hereinafter, "Compl.").

7. The Complaint alleges that Abbott violated District of Columbia Code § 28-3904 by selling a product that "contained non-functional slack-fill that is an unlawful and deceptive trade practice." Compl. ¶ 36. Smith alleges that Abbott "sells its products in the District of

Columbia through a number of distributors and retailers to the general public and through the internet," and "has marketed, advertised, and sold EAS 100% Whey Protein directly or indirectly (through its website, and other retail outlets) to the general public of the District of Columbia." *Id.* ¶¶ 29-30.  The Complaint also pleads that Smith "acts for the benefit of the General Public as a Private Attorney General for claims in this action arising under the DCCPPA, which expressly authorizes an individual to act 'on behalf of both the individual and the general public ... seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased'" under District of Columbia Code § 28-3905(k)(1)(B).  *Id.* ¶ 33.

8. As a result of his allegations, Smith pleads for a number of remedies "for himself and on behalf of the general public." *Id.* ¶ 42.  Smith seeks an injunction that Abbott "be barred from producing, manufacturing, packaging or selling its EAS 100% Whey Protein with nonfunctional slack-fill in the District of Columbia." *Id.*  Smith further seeks "[a]dditional relief to restore to the consumer money which was acquired by means of the unlawful trade practice in the District of Columbia." *Id.*  And Smith seeks punitive damages and reasonable attorneys' fees, as well as "[a]ll other statutory relief the court determines proper under D.C. Code § 28-3905(k)(1)." *Id.*  Smith did not plead the requirements of Superior Court Rule 23-I in connection with these allegations.

9. In light of prior case law from this District, Defendant lacked notice that this Removed Action was removable within 30 days of the Complaint.  In a line of cases including *Breakman v. AOL LLC*, 545 F. Supp. 2d 96 (D.D.C. 2008), courts in this District previously held that suits "on behalf of the general public" are not subject to the Class Action Fairness Act of 2005 ("CAFA").  *Id.* at 101-02; *see also* 28 U.S.C. § 1332(d)(11)(B)(ii)(III).  Further, under the

4

rule in *Breakman*, the amount in controversy was "apportioned" such that only the amount of recovery "running to each District of Columbia consumer" could be used to satisfy the amount in controversy. *Id.* at 106. The *Breakman* rule rendered practically unremovable any DCCPPA suit, even when asserted ostensibly on behalf of the general public. *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 73 n.3 (D.D.C. 2014). This rule was considered so well-settled that one case awarded costs under 28 U.S.C. § 1447(c) against a defendant that sought removal on the basis that that *Breakman* was wrongly decided. *Stein v. Am. Express Travel Related Servs.*, 813 F. Supp. 2d 69, 74 (D.D.C. 2011). The understanding that this suit was not removable when originally filed was further confirmed when a court in this District granted a motion to remand in a case brought by Smith's same counsel that—as here—alleges so-called slack-fill in whey protein powder containers. *Witte v. Gen. Nutrition Corp.*, --- F. Supp. 3d ---, 2015 WL 2237114 (D.D.C. May 13, 2015) (relying on *Breakman*). On the same day as the *Witte* decision, another court in a parallel slack-fill suit against General Nutrition Corp., *Huffman v. General Nutrition Corp.*, No. 15-cv-624, (D.D.C) (Ex. D), issued a *sua sponte* order that GNC show cause as to why remand should not be granted in light of the *Witte* decision and the similarities in allegations and supporting materials. *Huffman v. General Nutrition Corp.*, No. 15-cv-624, (D.D.C. May 13, 2015).

10.     The district courts' prior conclusions regarding D.C. law and the fundamental basis for the remand decisions are no longer valid. On September 3, 2015, the District of Columbia Court of Appeals issued its decision in *Rotunda v. Marriott International, Inc.*, No. 14-CV-618, 2015 WL 5173042 (D.C. Sept. 3, 2015). In *Rotunda*, the court confirmed that representative actions for damages under the DCCPPA are, in effect, class actions that must comply with Rule 23. *Id.* at *1, *7. The *Rotunda* decision undermines the method previously

5

utilized in this District for calculating the amount in controversy in DCCPPA representative actions. In light of *Rotunda*, damages and other amounts in controversy should not be apportioned to determine whether the $5,000,000 amount in controversy for class actions is satisfied under CAFA.

11. Defendant timely files this notice of removal. *See* 28 U.S.C. § 1446(b)(3) ("a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable"). Abbott files this notice within 30 days of the *Rotunda* order and plaintiff Smith's subsequent writing that Smith would not amend his pleading in light of *Rotunda*, but would proceed with "the case [a]s currently pled." Ex. B. This change in controlling precedent and plaintiff Smith's subsequent writing acknowledging the representative character of the Complaint as originally and still currently pled qualify as an "order or other paper from which it may first be ascertained that the case is one which is or has become removable[]" which start a new thirty day period for removal. *See* 28 U.S.C. § 1446(b)(3). This is because the Complaint originally, when viewed through the lens of previous law established by the courts in this District, did not "affirmatively reveal[] on its face the facts necessary for federal court jurisdiction." *See Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (internal citations omitted).

## JURISDICTION UNDER CAFA

12. This action is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, in that it is a purported class action in which plaintiffs are citizens of a State different from one or more Defendants, the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and the putative class exceeds 100 individuals.

13. CAFA, Pub. L. 109-2, 119 Stat. 4 (partially codified at 28 U.S.C. § 1332(d)), vests federal district courts with diversity jurisdiction over any purported class action in which (i) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (ii) the proposed class contains at least 100 members, and (iii) the amount in controversy is at least $5,000,000 in the aggregate. *See* 28 U.S.C. § 1332(d)(2), (d)(5). Each of these requirements is satisfied in this case.

## I.  This Case Is a Purported Class Action.

14. This case is a purported class action. Federal Rule 23 provides that one or more individuals "may sue or be sued as representative parties on behalf of all members" if the requirements of Rule 23 are met. Fed. R. Civ. P. 23(a). Smith's Complaint pleads such a representative action "on behalf of the general public … to restore to the consumer money which was acquired by means of the unlawful trade practice" and "on behalf of the general public … for all damages requested above including injunctive relief and all other monetary damages allowed by law …." Compl. ¶¶ 42-43. In *Rotunda*, the D.C. Court of Appeals affirmed the superior court's decision "that a CPPA claim for money damages brought by an individual on behalf of himself *and* other similarly situated members of the general public is in essence a class action, whether pled or not, and must satisfy the requirements of Rule 23." 2015 WL 5173042, at *1 (emphasis by Judge Weisberg). Thus, the Court of Appeals held "the framework long established by Rule 23 [must] govern representative suits in the Superior Court." *Id.*

15. Because, at the time of this removal, Smith's Complaint pleads for monetary relief and damages "on behalf of the general public"—in fact, Smith declined an offered opportunity to amend his Complaint in light of *Rotunda* and could have removed those pleadings—Smith's continued pleading of a representative action for damages qualifies as a class action and meets the first requirement of § 1332(d)(2).

## II. The Parties Are of Diverse Citizenship.

16. CAFA requires that "any member" of the plaintiff class be a citizen of a State different from "any defendant." 28 U.S.C. § 1332(d)(2)(A).

17. The Plaintiff is a resident of the District of Columbia (*see* Compl. ¶ 4), and the action is filed on behalf of both the Plaintiff and the general public of the District of Columbia (*see* Compl. ¶¶ 32-33, 35, 42-43).

18. In contrast, the Plaintiff pleads that the defendant "Abbott Laboratories d/b/a Abbott Nutrition Company" is a Delaware Corporation, with its principal place of business in Illinois. *Id.* ¶ 5.[2]

## III. The Amount in Controversy Exceeds $5,000,000.

19. By seeking damages in a representative capacity on behalf of the general public, the Complaint pleads, in essence, a putative representative class action of all members of the general public of the District of Columbia that purchased the allegedly deceptive EAS 100% Whey Protein product. *See* Compl. ¶¶ 29-33, 35, 42-43.

20. Smith pleads the EAS 100% Whey Protein "product's packaging is a deceptive and unlawful trade practice due to the nonfunctional slack-fill within the packaging"; "Upon information and belief, Abbott has sold numerous bottles of EAS 100% Whey Protein in the District of Columbia." Compl. ¶¶ 26-27.

21. Abbott Laboratories sold over 39,000 units of EAS 100% Whey Protein product in the District of Columbia in the three years prior to the serving of the Complaint. 9/24/2015 Declaration of Jason Smith ("Smith Decl.") ¶ 2 (giving sales data for 12.5 oz. containers in the

---

[2] There is, in fact, no such entity. Abbott Laboratories, Inc. is a Delaware corporation with its corporate headquarters in Illinois. Abbott Laboratories is an Illinois corporation with its corporate headquarters in Illinois. Regardless, neither entity is incorporated in or has its principal place of business in the District of Columbia.

8

District over three years). The DCCPPA authorizes remedies of "treble damages, or $1,500 per violation, whichever is greater, payable to the consumer." District of Columbia Code § 28-3905(k)(2)(A). Accordingly, 3,334 sales are sufficient to satisfy the $5,000,000 in aggregate damages required under CAFA. *See* 28 U.S.C. § 1332(d)(2). The over 39,000 units sold, multiplied by the $1,500 per violation authorized by the DCCPPA places an amount of more than $5,000,000 potentially "in controversy" under CAFA.[3]

### IV.     The Putative Class Exceeds 100 Claimants.

22.     The Complaint inherently describes a putative class of all members of the general public of the District of Columbia that purchased the allegedly deceptive EAS 100% Whey Protein product. *See* Compl. ¶¶ 29-33, 35, 42-43. The more than 39,000 units of the EAS 100% Whey Protein that the Defendant has sold in the District of Columbia were packaged individually and sold for individual consumption. Smith Decl. ¶ 2. Therefore, for there to be less than 100 claimants, each claimant in the District of Columbia would, on average, need to have purchased more than 131 individual units of the product each year for three straight years. This would equate to every single claimant consuming more than one entire package every three days, without fail. In addition, each 12.5 oz. jar contains 9 servings of product. This is more than sufficient evidence to show that the requirement that the proposed class exceeds 100 claimants is satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

### JURISDICTION UNDER 28 U.S.C. § 1332(a)

23.     Even if Smith were not pursuing a representative action for damages under the DCCPPA, the intervening *Rotunda* decision and Smith's statement regarding the impact of that decision on his pleading revealed that the Removed Action is, in the alternative then, properly

---

[3] To be clear, while Smith's allegations place this amount in controversy, Abbott denies that Smith can or should obtain such a recovery and will vigorously defend these allegations.

removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, due to complete diversity of citizenship between the parties, and the amount in controversy stemming from Mr. Smith's action exceeds $75,000.

24. *Rotunda* held that "the framework long established by Rule 23 [does] govern representative suits in the Superior Court." 2015 WL 5173042 at *1. To the extent Smith might argue—contrary to the plain language of his current Complaint and pleadings which Smith declined the opportunity to amend—that his Complaint does *not* plead a representative action in light of the *Rotunda* decision and order, Smith's response allowed Abbott to "first [] ascertain[] that the case is one which is or has become removable" because Smith would be seeking all of the relief pled in his *individual* capacity. *See* 28 U.S.C. § 1446(b)(3).

**I.     The Parties Are of Diverse Citizenship.**

25. The citizenship of the parties in the Removed Action satisfies 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter . . . is between . . . citizens of different States.")). As stated above, the Plaintiff is a resident of the District of Columbia. *See* Compl. ¶ 4. Also, as noted above, Abbott is not.

**II.    The Amount in Controversy Exceeds $75,000.**

26. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

27. Smith is seeking an injunction mandating that Abbott "be barred from producing, manufacturing, packaging or selling its [12.5 oz.] EAS 100% Whey Protein with nonfunctional slack-fill in the District of Columbia." Compl. ¶ 42. The cost of complying with such injunctive relief is a consideration of the amount in controversy analysis for diversity jurisdiction. *See, e.g.*, *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978). Should Smith not pursue a

representative class action in compliance with Rule 23, then the entire cost of complying with injunctive relief would and should be apportioned to Mr. Smith for purposes of determining amount in controversy.

28.     In order for Abbott to comply with the injunctive relief sought, Abbott would have to change the amount of fill in the container or the product container itself.  Because it would be inefficient to produce a special product for the District of Columbia, an injunction would force a nationwide revision and reintroduction of the product and packaging.  The associated costs would be significant and include costs related to: the new product design, prototyping and testing; redesign of product labels; introduction to the supply chain including distributors and retailers; and increased production costs.  *See* 9/24/2015 Declaration of John D. Jacobs ("Jacobs Decl.).

29.     Increasing the amount of product in the current containers would require Abbott to "formulate and develop what literally would be a new product from a manufacturing and distribution perspective."  Jacobs Decl. ¶ 4.  This effort would include numerous manufacturing test runs and extensive quality control, thus involving engineers, managers, and manufacturing personnel.  *Id*. ¶ 5.  Just this part of the endeavor would cost Abbott in excess of $50,000.  *Id*.

30.     Another costly aspect of the launch of the new product would be the redesign of the label to reflect the change in contents of the container, which includes multiple levels of review by "medical, regulatory, and legal affairs to ensure compliance with standards and regulations," and significant administrative expenses for "modifying product tracking systems and databases."  *Id*. ¶ 6.  The redesign efforts alone would cost at least $20,000, and in addition the "new molds and dies" required to print the new labels would cost in excess of $25,000.  *Id*.

31. The above noted costs quickly accumulate to more than $95,000 in order for Abbott to merely develop a product in compliance with an injunction, while still using the current jar. Abbott would incur additional costs during the actual production of the new product, for example, if the new product required more protein powder. Although Smith fails to plead facts reflecting how much alleged "empty space" in the EAS product would need to be filled, just a 10% increase in the current fill level would raise Abbott's production costs by approximately $180,000 per year. *Id.* ¶ 8. If compliance with the injunction instead led to the use of a different container, "Abbot would incur far greater costs in the launch of such a new product." *Id.* ¶ 7.

32. These costs reflect that for Abbott to comply with an individual action by Smith for injunctive relief would total more than $75,000. *Id.* ¶¶ 4-8. Accordingly, the $75,000 amount in controversy requirement for diversity jurisdiction under § 1332(a).

## REMOVAL PROCEDURES

33. The CAFA removal statute states that class actions may be removed to federal court "in accordance with section 1446." 28 U.S.C. § 1453(b). 28 U.S.C. § 1446 also governs removal on the basis of diversity jurisdiction under § 1332(a).

34. Consistent with § 1446, Abbott is providing this Notice, which provides the requisite "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This Notice has been prepared and signed by an authorized attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure. *Id.*

35. Pursuant to 28 U.S.C. § 1446(d), Smith is being provided a copy of this Notice of Removal, and a copy of this Notice of Removal is also being filed with the Clerk of the Superior Court of the District of Columbia.

36.     By filing this Notice of Removal, Abbott does not waive any defenses that may be available to it.

37.     Consistent with the requirements of the statute, a copy of all pleadings previously filed in the State Action and "a copy of all process, pleadings, and orders served upon" the Defendant are attached hereto. 28 U.S.C. § 1446(a). These documents are as follows:

Documents from Superior Court

Exhibit A:   *Rotunda v. Marriott Int'l, Inc.*, No. 14-CV-618, 2015 WL 5173042 (D.C. Sept. 3, 2015)
Exhibit B:   Correspondence between counsel for Smith and counsel for Abbott dated September 22, 2015

Further, for the Court's convenience, attached as Exhibit C is the docket sheet in the State Action, and Exhibit D, *Huffman v. General Nutrition*, No. 15-cv-624 (D.D.C. May 13, 2015).

38.     Because this Notice of Removal is being filed within thirty (30) days of the *Rotunda* decision and September 22, 2015 statement by Smith declining to amend his Complaint as currently pled, this removal is timely pursuant to 28 U.S.C. § 1446(b).

39.     Abbott does not bear the burden of demonstrating in this Notice the inapplicability of any potential basis upon which the Court might decline to exercise the jurisdiction granted in § 1332(d)(2).

## **CONCLUSION**

40. WHEREFORE, Abbott Laboratories, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, removes this action in its entirety from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.

September 25, 2015                                    Respectfully submitted,

                                                                      /s/ Gregg F. LoCascio, P.C.
Gregg F. LoCascio, P.C., DC Bar No. 452814
Jonathan D. Brightbill, DC Bar No. 483956
    (admission pending)
Anders P. Fjellstedt, DC Bar No. 991431
    (admission pending)
Kirkland & Ellis LLP
655 15th Street, NW, Suite 1200
Washington, DC  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for Abbott Laboratories, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF and to Plaintiff's counsel, as listed here, also by U.S. Mail and Electronic Mail:

Jonathan B. Nace
PAULSON & NACE, PLLC
1615 New Hampshire Avenue, NW
Washington, DC 20009
Telephone: (202) 463-1999
Email:  jnace@paulsonandnace.com

Christopher T. Nidel
NIDEL LAW, PLLC
1615 New Hampshire Avenue, NW
Washington, DC 20009
Telephone: (202) 558-2030
Email:  chris@nidellaw.com

Steven J. German
GERMAN RUBENSTEIN LLP
19 West 44th Street
Suite 1500
New York, NY 10036
Telephone: (212) 704-2020
Email:  sgerman@germanrubenstein.com

Nicholas A. Migliaccio
MIGLIACCIO LAW FIRM PLLC
Washington, DC 20003
Telephone: (202) 470-3520
Email:  nmigliaccio@classlawdc.com
COUNSEL FOR PLAINTIFF
*Shawn M. Smith*

                */s/ Gregg F. LoCascio, P.C.*
                 Gregg F. LoCascio, P.C.